

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00439-CV
_____


XOG OPERATING, LLC AND
GERONIMO HOLDING CORPORATION, APPELLANTS

V.

CHESAPEAKE EXPLORATION LIMITED PARTNERSHIP
AND CHESAPEAKE EXPLORATION, L.L.C., APPELLEES

_____

On Appeal from the 31st District Court
Wheeler County, Texas
Trial Court No. 12,375, Honorable Steven R. Emmert, Presiding

_____

September 2, 2015

## DISSENTING OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.


For the reasons I will outline briefly, I am unable to agree with my colleagues' reading of the retained acreage language in the assignment. The retained acreage clause reads, in part, as follows:

> Upon the expiration of the Primary Term of this Assignment . . . this Assignment and all rights created hereunder shall terminate as to all lands and depths covered hereby. Said lease shall revert to Assignor, save and except that portion of said lease included within the proration or pooled unit of each well drilled under this Assignment and producing or capable of

producing oil and/or gas in paying quantities. The term "proration unit" as used herein, shall mean the area within the surface boundaries of the proration unit then established or prescribed by field rules or special order of the appropriate regulatory authority for the reservoir in which each well is completed.

The majority adopts the interpretation of the language advanced by appellees Chesapeake Exploration Limited Partnership and Chesapeake Exploration, LLC. It reads the language to express the parties' intention that on expiration of the primary term, the assignee would retain the leasehold insofar as it applied to the number of acres in each producing well's proration unit, as established or prescribed by the applicable field rules. Because, the majority says, the field rules for the Allison-Britt (12,350') Field prescribe a 320-acre proration unit, the assignee retained 320 acres per well completed in that field, regardless of the acreage the operator chose to assign to the well by its Form P-15.

But the assignment doesn't say the assignee will retain the number of acres in a unit prescribed by the field rules. It says the assignee will retain "that portion of said lease included within the proration . . . unit," and then defines "proration unit." Merely defining the term "proration unit" does not make the assignment say that the portion of the lease included within the proration unit "is," "must be" or "always equals" the prescribed proration unit. By equating the former phrase "the portion within the proration . . . unit" with the prescribed 320-acre proration unit, the majority effectively has read the former phrase out of the parties' agreement.

By its assumption the parties intended the assignee to retain 320 acres, the majority also reads language into the parties' agreement. The agreement's "proration

2

unit" definition speaks of "the area within the surface boundaries of the proration unit then established or prescribed by field rules."  The assignment's language does not suggest the parties intended the assignee to retain the maximum acreage permitted for a proration unit by the field rules.[1]

[1] RULE 2 of the [field rules for the Allison-Britt (12,350') Field] reads as follows:

> The acreage assigned to the individual gas well for the purpose of allocating allowable gas production thereto shall be known as the prescribed proration unit.  No proration unit shall consist of more than three hundred twenty (320) acres except as hereinafter provided; and the two farthermost points in any proration unit shall not be in excess of six thousand (6,000) feet removed from each other; provided that tolerance acreage of ten (10) percent shall be allowed for each unit so that an amount not to exceed a maximum of three hundred fifty-two (352) acres may be assigned.  For allowable assignment purposes, the prescribed proration unit shall be a three hundred twenty (320) acre unit, and each unit containing less than three hundred twenty (320) acres shall be a fractional proration unit.  All such proration units shall consist of continuous and contiguous acreage which can reasonably be considered to be productive of gas.  No double assignment of acreage will be accepted.
>
> An operator, at his option, shall be permitted to form fractional units of one hundred sixty (160) acres with a proportional acreage allowable credit for a well on such unit with the two farthermost points of such one hundred sixty (160) acre fractional unit not greater than four thousand five hundred (4,500) feet removed from each other.
>
> Operators shall file with the Commission certified plats of their properties in said field which plats shall set out distinctly all of those things pertinent to the determination of the acreage credit claimed for each well; provided that if the acreage assigned to any proration unit has been pooled, the operator shall furnish the Commission with such proof as it may require as evidence that interests in and under such proration unit have been so pooled.

The majority notes that the field rules provide for fractional proration units, and wonders whether Chesapeake's designated units containing fewer than 320 acres could even be considered "proration units" under the assignment's definition.  Perhaps not, but the acreage assigned to the well by Chesapeake still would be "that portion of said

3

The majority's reading of the assignment is untenable also because it fails to accomplish the language's purpose of identifying the acreage to be retained by the assignee. If the language says only that the assignee retains 320 acres because that's the prescribed proration unit, it begs the question, "which 320 acres?" As the majority points out, the field rules do not prescribe the particular acreage to be contained within the prescribed proration unit. That fact is not an argument for reliance only on the field rules for the identification of the acreage to be retained. It is an argument to give effect to the language used by the parties, by which the assignee retains "that portion of said lease included within the proration . . . unit." The parties cannot identify "that portion" merely by identifying the number of acres it may contain.[2]

The Eastland Court of Appeals recently addressed lease language similar to the assignment language we encounter in this case. *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 448 S.W.3d 169 (Tex. App.—Eastland 2014, pet. filed). The lease contained language stating that at the end of its primary term, it would terminate as to all of the leased lands, except for "those lands and depths located within a governmental proration unit assigned to a well . . . , with each such governmental proration unit to contain the number of acres required to comply with the applicable rules and regulations of the [Railroad Commission] for obtaining the maximum producing allowable for the particular well." *Id.* at 175-76. The parties took positions like those we confront: the lessee contended the latter clause of the retained acreage

_____

lease included within the proration . . . unit," which is the acreage to be retained under the assignment's plain language.

[2] When the parties wanted to designate the configuration of the proration unit as well as its number of acres, they did so, in the case of wells not subject to field rules or special order.

4

language "automatically establishes the size of the proration units" to be the maximum acreage, 160 acres. *Id.* at 177. The court disagreed, holding that the lessee's interpretation conflicted with the parties' use of the word "assigned" in the language's earlier clause. The language in its entirety, the court found, demonstrated that the parties intended "the last clause in [the retained acreage language] to define the amount of acres that [the lessee] was to include in the governmental proration units that it assigned in its certified proration plats filed with the [Railroad Commission]."

The parties to the assignment in our case did not use the phrase "lands and depths located within a governmental proration unit assigned to a well." But they used the words "that portion of said lease included within the proration . . . unit." The effect is the same. The Eastland court recognized that it is by the filing of the certified proration plat that acreage is assigned to a governmental proration unit for a well. *Id.* at 178. Acreage is "included within" a proration unit in the same way.

I would give the language before us a construction like that the Eastland court applied in *Endeavor*. 448 S.W.3d at 177-78. Such a construction would require reversal of the trial court's summary judgment in favor of appellees Chesapeake Exploration Limited Partnership and Chesapeake Exploration, LLC, and remand to the trial court. Because the Court affirms the summary judgment, I respectfully dissent.


James T. Campbell
Justice


5